UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JENNIFER LYNN DODGE,**

      **Plaintiff,**                   **CIVIL ACTION NO. 16-cv-11889**

      **v.**                             **DISTRICT JUDGE LINDA V. PARKER**

**COMMISSIONER OF**           **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jennifer Lynn Dodge seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her mental and physical impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 12).  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

### I. RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 11) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 12) be **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on July 30, 2013, alleging that she has been disabled since March 18, 2013, due to lupus, arthritis, emotional issues, and a learning disability. (TR 144–155, 205.) The Social Security Administration denied Plaintiff's claims on December 6, 2013, and Plaintiff requested a *de novo* hearing. (TR 87, 88, 99–100.) On March 10, 2015, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Ena Weathers. (TR 27–53.) In a March 26, 2015 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 20–21.) The Appeals Council declined to review the ALJ's decision (TR 1–6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently pending before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Defendant (docket no. 12 at 7–12) and the ALJ (TR 14, 19–21) each set out a detailed, factual summary of Plaintiff's medical record and the hearing testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between Plaintiff's and the ALJ's recitations of the record. Therefore, the undersigned will incorporate the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2017; that Plaintiff had not engaged in substantial gainful activity since

the alleged onset date of March 18, 2013; and that Plaintiff suffered from the following severe impairments: lupus, bilateral knee osteoarthritis, obesity, adjustment disorder, and mild intellectual disability. (TR 15.) The ALJ also found that Plaintiff's alleged left hip pain was not a severe impairment. (*Id.*) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 15–17.) The ALJ then found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant would require the ability to change positions from sitting to standing for 1-2 minutes every one to two hours without interfering with work product. She could never climb ladders, ropes, or scaffolds. She could occasionally kneel, crawl, crouch, or climb ramps or stairs. She could occasionally perform pushing or pulling with the left lower extremity. She would be limited to simple routine tasks without strict production demands. She would require occasional verbal or demonstration instruction reminders with the introduction of new tasks.

(TR 17.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 21.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from March 18, 2013, through the date of the ALJ's decision. (TR 9, 22.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

5

Plaintiff asserts that this matter should be reversed and remanded under sentence four for an award of benefits because the ALJ's finding that Plaintiff did not meet Listing 12.05B is not supported by substantial evidence. (Docket no. 11 at 10–15.) The version of Listing 12.05B in effect at the time of the ALJ's decision[1] provides:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ...
>
> B. A valid verbal, performance or full scale IQ of 59 or less.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05B. In order to demonstrate intellectual disability under Listing 12.05B, Plaintiff must demonstrate that her impairment satisfies the diagnostic and severity criteria of that listing. More specifically, Plaintiff must demonstrate (1) significantly subaverage intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period; and (2) a valid verbal, performance, or full scale IQ of 59 or less. *See id*; *see also Dragon v. Comm'r of Soc. Sec.*, 470 Fed. App'x 454, 460 n.1 (6th Cir. 2012). Here, while the ALJ did not specifically discuss part B of Listing 12.05, she found that Plaintiff did not meet the requirements of any part of Listing 12.05 because the record did not establish that Plaintiff had deficits in adaptive functioning:

> To meet listing 12.05 for intellectual disability, the claimant must demonstrate significantly subaverage general intellectual functioning with deficits in adaptive

---

[1] Neither party argues that the current version of Listing 12.05B (effective March 27, 2017) should be applied here, and the undersigned agrees. "The [Social Security] Act does not generally give the SSA the power to promulgate retroactive regulations." *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006).

> functioning and the impairment must have initially manifested during the developmental period (before 22). While the claimant obtained a full-scale IQ of 48 in 1992 WISC-IV testing and a full-scale IQ score of 55 in November 2013 WAIS-IV testing, **the record indicates a wide range of adaptive functioning**. In regards to work, the claimant reported she is able to currently work part-time as a cashier at a pharmacy. She reported that she was able to work full-time as a cashier at Kroger until 2009 but only started working part-time because she needed to spend more time at home caring for her father. In terms of home-living, the claimant reported she is able to drive, prepare meals, go out grocery shopping, do laundry, and wash dishes. Regarding leisure, the claimant reported she could play videogames, go to her son's school for events, and go out for her son's field trips. In terms of functional academic skills, the claimant reported she could read and write, read to her daughter, read books and magazines for up to 2 hours, and handle her own finances. Regarding self-care, the claimant reported she could groom herself and care for her baby . . . . Because the initial requirements of listing 12.05 are not met, the listing for intellectual disability is not met.

(TR 17 (emphasis added).)

"The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009) (citing *Heller v. Doe,* 509 U.S. 312, 329 (1993) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* 28–29 (3d rev. ed. 1987) ("DSM–III"))); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 12.00(C)(1) (Jan. 2, 2015–May 17, 2015 version) (defining adaptive activities to include activities of daily living such as cleaning, cooking, shopping, paying bills, maintaining a residence, taking public transportation, and exercising proper self-care).

In her brief, Plaintiff argues that the ALJ erred in finding that Plaintiff did not meet the IQ requirements of Listing 12.05B. Plaintiff points out that both IQ tests she took resulted in scores lower than 59, which, she argues, qualifies her for Listing 12.05B. Plaintiff's argument plainly misses the mark, as the ALJ relied on Plaintiff's lack of deficits in adaptive functioning to determine that Plaintiff did not meet the requirements of Listing 12.05B, not Plaintiff's IQ

scores.  As shown above, in the quotation from the ALJ's decision, the ALJ provided a clear and thorough explanation to support her conclusion that Plaintiff did not suffer from significant deficits in adaptive functioning.  Later in her decision, the ALJ further describes how the state consultative examiner, Terry Rudolph, Ph.D., reported that Plaintiff was "able to interpret proverbs and could deal with abstract verbal material," despite her "mild intellectual disability." (TR 19; 414.)  Plaintiff does not challenge any of these findings or the ALJ's description of her capabilities with regard to adaptive functioning, apparently having overlooked the significance of that portion of the ALJ's analysis to Listing 12.05B.

At this juncture, it is worthy to note that the Sixth Circuit and courts in this district have found that evidence similar to that relied upon by the ALJ was sufficient to find a lack of deficits in adaptive functioning.  *See, e.g., Hayes*, 357 F. App'x at 677 (evidence that the claimant cared for herself and her husband, cooked meals, did laundry, shopped, managed her finances, and used public transportation showed that her adaptive skills were not deficient); *Noble v. Comm'r of Soc. Sec.*, No. 14-CV-12588, 2015 WL 4934562, at *4 (E.D. Mich. Aug. 18, 2015) (claimant's ability to raise her children, live alone, attend GED classes, cook, do housework, count money, do basic math, achieve average grades in school, drive, and shop by herself are valid signs of adaptive functioning); and *Davis v. Comm'r of Soc. Sec.*, No. 13-13319, 2014 WL 7883577, at *3-4 (E.D. Mich. Dec. 15, 2014), *report and recommendation adopted*, No. 13-13319, 2015 WL 668035 (E.D. Mich. Feb. 17, 2015) (claimant who was capable of handling all self-care requirements, was reportedly well-groomed at therapy sessions, lived with his father, had a girlfriend, utilized public transportation if he could find someone to accompany him, and was able to regularly watch television and use the computer to socially interact with friends and family did not have the deficits in adaptive functioning necessary to satisfy the requirements of

Listing 12.05). Furthermore, "because the ALJ's finding that Plaintiff does not meet the diagnostic description set forth in the introductory paragraph of Listing § 12.05 precludes Plaintiff from being able to satisfy the requirements under any paragraph of Listing § 12.05," the ALJ's failure to specifically discuss the requirements of Listing 12.05B is harmless error. *Grillot v. Astrue*, No. 3:11-cv-00374, 2012 WL 5493969, at *13 (S.D. Ohio Nov. 13, 2012) (citing *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009)).

At the end of her brief, Plaintiff points out (without developing an argument) that "[i]t does not appear that Listing 12.05 was considered or evaluated by the initial reviewers in the Disability Determination Explanation. . . . Listing 12.05 was not considered and the record does not contain evaluation of that listing." (Docket no. 11 at 14–15.)

State agency psychological consultant Bruce G. Douglass, Ph.D., completed the psychological portion of Plaintiff's Disability Determination Explanation. Plaintiff is correct that Dr. Douglass identified only Listing 12.04 (affective disorders), and Listing 12.02 (organic mental disorders) as the "Adult Listings Considered" pertaining to Plaintiff's mental impairments. (TR 65, 79.) However, as Defendant points out, there is some evidence Dr. Douglass actually did consider Listing 12.05. Specifically, the Disability Determination and Transmittal form, also signed by Dr. Douglass, provides that Plaintiff's secondary diagnosis is "intellectual disorder" identified by code no. 3180, which covers Listing 12.05, Intellectual Disorder. (TR 87; *see also* SSA Program Operations Manual System DI 26510.015, *available at* https://secure.ssa.gov/poms.nsf/Inx/0426510015 ("Intellectual disability, meets Listing 12.05, code 3180"). Moreover, the record reflects that Dr. Douglass considered Plaintiff's IQ scores, and requested updated testing by the SSA, even though there are no IQ requirements in Listings 12.02 or 12.04. (TR 254; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.02, 12.04.)

9

More important, however, is the fact that Dr. Douglass specifically found that Plaintiff did not have any "adaptation limitations" and that, "[d]espite her low scores on IQ testing, she appears to be functioning in the borderline range and is likely to be able to sustain work activity doing routine tasks." (TR 69.) The ALJ gave "partial weight" to Dr. Douglass's opinion, finding that Plaintiff would require additional restrictions of "requiring occasional verbal or demonstration instruction reminders with the introduction of new tasks." (TR 19.) Once again, the undersigned notes that deficits in adaptive functioning are a requirement of Listing 12.05B. The record, including Dr. Douglass's opinion, supports the ALJ's finding that Plaintiff did not have any deficits in adaptive functioning. Therefore, the ALJ's finding that Plaintiff did not meet the requirements of Listing 12.05 is also properly supported.

Because the ALJ's finding that the record did not establish that Plaintiff had deficits in adaptive functioning is supported by substantial evidence, and because a showing of deficits in adaptive functioning is necessary to meet Listing 12.05B, the ALJ's finding that Plaintiff's impairments did not meet Listing 12.05 is supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment should be denied.

## VI. CONCLUSION

For the reasons stated herein, the Court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 11) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 12).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections

10

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 8, 2017           s/ Mona K. Majzoub
                             MONA K. MAJZOUB
                             UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: May 8, 2017           s/ Lisa C. Bartlett
                             Case Manager